<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| _____ : | | |
| Dr. Keenan K. Cofield, : | | |
| : | Civil Action No. 15-558(RMB) | |
| Plaintiff, : | | |
| : | | |
| v. : | **OPINION (For Public)** | |
| : | | |
| U.S. Dept. of Justice, et al, : | | |
| : | | |
| Defendants. : | | |
| _____ : | | |

**BUMB**, District Judge:

This matter is before the Court upon Defendants' motion to dismiss (ECF No. 19), and Plaintiff's sealed motion for a protective order.[1] (ECF No. 20.) Section II.A. of this Opinion, addressing Plaintiff's sealed motion for protective order, shall be redacted. For the benefit of the parties, an unredacted opinion shall be filed under seal.

Plaintiff initially filed the present complaint [ECF No. 1-1 at 4-15] in Superior Court of the District of Columbia, and Defendants removed the case to the U.S. District Court for the District of Columbia. (See Civil Docket for case #1:14-cv-00746-KBJ, U.S. District Court, District of Columbia) (ECF No. 12). On

---

[1] Defendants did not respond to Plaintiff's motion for protective order.

January 28, 2015, the U.S. District Court for the District of Columbia transferred the case to the District of New Jersey because Plaintiff's claims arose out of events that occurred while he was imprisoned at the Federal Correctional Institution ("FCI-Fairton") in Fairton, N.J. (See, Memorandum Opinion and Order Granting Motion to Transfer, ECF No. 11.)

Defendants seek dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), and 12(b)(6) (failure to state a claim upon which relief may be granted) for the following reasons: (1) lack of jurisdiction under the doctrine of derivative jurisdiction; (2) a federal inmate cannot bring FTCA claims for alleged work-related injuries and subsequent medical treatment for such injuries because the IACA provides the exclusive remedy; (3) judicial review over IACA claims are limited to review of procedural safeguards and for abuse of discretion; (4) Bivens claims may not be brought against federal agencies or federal officials sued in their official capacities; (5) the complaint fails to state a Bivens claim against any individual defendant because Plaintiff has not alleged the personal involvement of any individual in a constitutional violation; (6) Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to a serious medical need; (7) Plaintiff fails to state a Due Process claim for his placement in administrative

2

segregation; (8) Plaintiff fails to state an Eighth Amendment claim for conditions of confinement including triple-celling, sleeping on the floor or being housed with a sick inmate; (9) Plaintiff's defective detainer claim is barred by Heck v. Humphrey; and (10) a Due Process claim based on deprivation of property is not actionable unless no post-deprivation remedy is available. Plaintiff did not file an opposition to the motion to dismiss.

## I.   BACKGROUND

Plaintiff is a recreational litigant, having filed approximately 125 cases in federal court.[2] See Cofield v. U.S., 14-2637(RMB), 2014 WL 1745018 (D.N.J. Apr. 30, 2014); Cofield v. Alabama Public Service Com'n, 936 F.2d 512, 514-15 (11th Cir. 1991) (affirming district court's dismissal of seven civil actions as frivolous.) In his complaint, Plaintiff alleged that the Defendants who were employed as case managers, counselors, employed in Medical & Health Services, employed in Food Services, and Inmate Systems Staff "were fully aware" that Plaintiff was totally and permanently disabled prior to and during incarceration. (ECF No. 1-1 at 6, ¶1.) He further alleged Defendants knew or should have known that he was not able to work and should not be assigned any job within the FBOP. (Id., ¶

---

[2] See Public Access to Court Electronic Records ("PACER") available at  https://www.pacer.gov/findcase.html

2.) On March 8, 2012, Dr. Ruben B. Morales signed a Medical Duty Status Form indicating Plaintiff was not cleared for food service and "Not Medically Cleared---Permanent."  (Id., ¶5.)

Plaintiff was assigned to work in Food Service at FCI-Fairton by "Counselor and Classification Staff." (Id., ¶7.) A job was created especially for Plaintiff "by the Warden and other staff." (Id.) The job required Plaintiff to take food trays from inmates seven days a week, standing two to four hours at a time, and lifting up to fifty pounds at least twice a week, despite Plaintiff's permanent back, left leg, and hand injuries with permanent nerve damage. (Id.) Plaintiff was required to work in this job assignment from February 24, 2012 through March 22, 2012. (Id.)

Plaintiff fell on two occasions while working and reported that he suffered pain from his injuries. (Id.) Plaintiff was not evaluated until he "went on writ and was seen by State of MD doctors . . . and others for back swelling, spasms, left leg swelling, left shoulder pains, right hand swollen, cracking and swelling on left side jaw-with TMJ-Lockjaw, permanent. . . [a]ll resulted from [Plaintiff's] falls at FPC-Fairton, NJ." (Id., ¶ 8.) Plaintiff received no medical treatment for four to six months, although he filed 30 to 60 Sick Calls and complaints

about his accident. (Id., ¶9.)[3] Plaintiff never received any decision on his tort claims from the FPI-Inmate Claims Examiners' Office. (Id.)

In Count 2 of his complaint, Plaintiff alleged he was "illegally and unlawfully placed in Admin. Seg. or the SHU, based upon a defective, unsigned, State Court Sentencing Order or Criminal Judgment, that violated MD State laws [and] Federal Criminal Rules 32(k)(1)." (Id. at 10, ¶12.) He further alleged that from April 6, 2012 through April 20, 2012, and April 30, 2012 through May 3, 2012, he was housed with two other inmates in a cell built for only two inmates, constituting cruel and unusual punishment and violation of a BOP Program Statement. (Id.) As a result, Plaintiff had to sleep on the floor, and he also became sick after exposure to one of the inmates who had a serious infection. (Id.)

Plaintiff alleged that Defendants violated federal laws, FBOP policy, and Plaintiff's due process rights by allowing the County of Baltimore, Maryland to file a detainer without jurisdiction, based on a Judgment and Commitment Order that was not signed by a judge. (Id. at 10-11, ¶14.) The Warden agreed

_____

[3] Plaintiff also alleged that the second time he fell at work, he was told to "see Medical at pill line." (ECF No. 1-1 at 6, ¶8.) Although he was given pills that evening, Plaintiff was "never seen for my actual injuries and on the job accident injuries." (Id.)

that the detainer was not valid but told Plaintiff the issue should be handled by a court. (Id. at 11, ¶16.)

In Counts Three and Four of the complaint, Plaintiff alleged that on or about March 22, 2012 and again on September 12, 2012, an officer at FCI-Fairton, whose name is unknown, packed some of Plaintiff's property and prepared an inventory list. (Id. at 12-13, ¶18.) When Plaintiff received his property from FCI-Fairton after being moved to another facility in July, 2012, much of Plaintiff's property was missing. (Id. at 13, ¶.) Plaintiff "filed some 50 complaints" about his missing property. (Id.) Plaintiff received no word on his complaints, administrative remedies, tort claims, and other actions seeking compensation for his property loss. (Id. at 14, ¶20.)

Plaintiff also added a fifth count to his complaint as an addendum. He alleged the defendant supervisors were liable for failure to train and/or supervise. (ECF No. 1-1 at 15.) For relief, Plaintiff requested money damages. (ECF No. 1-1 at 14, ¶21.)

## II.  DISCUSSION

### A.  Motion for Protective Order

**REDACTED**

**B.   Doctrine of Derivative Jurisdiction**

Defendants contend that when Plaintiff filed this action in the Superior Court of the District of Columbia, the court did not have subject matter jurisdiction over his claims under the Federal Tort Claims Act or the Inmate Accident Compensation Act. Furthermore, the Superior Court did not have personal jurisdiction over the BOP officials at FCI-Fairton. Thus, Defendants conclude this Court did not have removal jurisdiction under 28 U.S.C. § 1442(a)(1); and under the doctrine of derivative jurisdiction, this action should be dismissed for lack of jurisdiction.

The derivative jurisdiction doctrine provides that "a federal district court is without proper removal jurisdiction if the state court from which the case was removed lacked subject matter jurisdiction, even if the case could have originally been

7

filed in federal court." Calhoun v. Murray, 507 F. App'x 251,
256 (3d Cir. 2012) (citing Minnesota v. United States, 305 U.S.
382, 389 (1939)). The doctrine has been abrogated for removals
under 28 U.S.C. § 1441, but "arguably still applies to removals
. . . pertaining to federal officers, 28 U.S.C. § 1442." Id.
(citing Rodas v. Seidlin, 656 F.3d 610, 619 (7th Cir. 2011);
Palmer v. City Nat'l Bank, 498 F.3d 236, 246 (4th Cir. 2007)).

The doctrine of derivative jurisdiction, however, is not an
essential ingredient to subject matter jurisdiction, it creates
a defect in removal. Id. (quoting Rodas, 656 F.3d at 619).[4] Each
of Plaintiff's federal claims could have been properly filed in
the first instance in this Court. See Rodas, 656 F.3d at 619
("Because the district court would have had jurisdiction over a
hypothetical complaint filed at the time it entered the judgment
now under review, the fact that the state court lacked
jurisdiction over the case when it was removed has no
significance"); Baggs v. Martin, 179 U.S. 206, 209 (1900) (even
where basis for removal was improper, court "plainly had

---

[4] The district court cases cited by Defendants in support of
dismissal based on derivative jurisdiction do not discuss the
Third Circuit's finding in Calhoun that derivative jurisdiction
is a procedural defect in removal, and not an essential
ingredient to subject matter jurisdiction. See Ray v. Allocco,
Civ. Action No. 2:12-CV-5698 ES-SCM), 2013 WL 4487469, at **1-2
(D.N.J. Aug. 19, 2013) (Report and Recommendation, adopted by
Letter Order, Feb. 11, 2014); Parisi v. U.S.; Civ. No. 12-3109
(RMB), 2013 WL 1007240, at *3 (D.N.J.); Telchin v. Perel, Civ.
No. 14-1848, 2014 WL 2451378, at *3 (D.N.J. June 2, 2014).

jurisdiction to entertain and determine the controversy.")
Therefore, this Court is not deprived of subject matter
jurisdiction despite the procedural defect in removal. See
Calhoun, 508 F. App'x at 256-57; Rodas, 656 F.3d at 619 ("The
doctrine of derivative jurisdiction, despite its improvident
name, is best understood as a procedural bar to the exercise of
federal judicial power"); Wright, Miller, Cooper & Steinman,
Federal Practice & Procedure § 3721 ("removal is not a kind of
jurisdiction" . . . "it is a means of bringing cases within
federal courts' original jurisdiction into those courts, as is
commencement of a suit in federal court.")

   Moreover, because Defendants created the procedural defect
by removing this case to federal court (ECF No. 1) rather than
moving to dismiss for lack of jurisdiction in the Superior Court
of the District of Columbia, they waived objection to the
procedural defect. See Mackay v. Uinta Development Co., 229 U.S.
173, 176-77 (1913) (where the court had jurisdiction over the
subject matter "an irregularity was waivable, and neither it nor
the method of getting the parties before the court, operated to
deprive it of the power to determine the cause.")
Therefore, the Court will deny Defendant's motion to dismiss
based on lack of subject matter jurisdiction under the
derivative jurisdiction doctrine.

C.    **Federal Tort Claims Act ("FTCA")**

A federal inmate may not bring an action under the Federal Tort Claims Act for work-related injuries in federal prison, or subsequent medical treatment for such injuries because the Inmate Accident Compensation Act provides the exclusive remedy for such negligence-based claims. 18 U.S.C. § 4126; 28 C.F.R. Part 301; United States v. Demko, 385 U.S. 149, 151-54 (1966); Cooleen v. LaManna, 248 F. App'x 357, 362 (3d Cir. 2007) ("Federal prisoners seeking compensation for injuries sustained during penal employment are limited to the remedy provided by 18 U.S.C. § 4126.")) "Section 4126 is also the exclusive remedy when a work-related injury is subsequently aggravated by negligence and malpractice on the part of prison officials." Cooleen, 248 F. App'x at 362 (quoting Wooten v. United States, 825 F.2d 1039, 1044 (6th Cir. 1987)); see also Patterson v. Potope, No. 4:11-cv-497, 2013 WL 1314050 (M.D. Pa. Mar. 28, 2013) ("Although Plaintiff challenged Defendants' prior decision to clear him to work in Food Services without proper medical shoes to protect his pre-existing foot injury, and the adequacy of his medical care after the incident, the IACA still controls this claim") (citations omitted).[5] Therefore, the Court will

_____

[5] The IACA does not foreclose a Bivens claim because "there is very little deterrent effect for constitutional harms within the [IACA], and there is no alternative forum where the alleged constitutional violation could be addressed." Harper v. P.

dismiss Plaintiff's FTCA claims[6] without prejudice. Plaintiff may amend the complaint if he can allege facts establishing a tort claim unrelated to his work-related injuries, and otherwise in compliance with the requirements of the FTCA.

### D.   Inmate Accident Compensation Act ("IACA")

A federal inmate may bring a claim under the IACA by submitting an Inmate Claim for Compensation On Account of Work Injury no more than 45 days prior to the inmate's release but no less than 15 days prior. 28 C.F.R. § 301.303(a). Defendants contend Plaintiff submitted his Inmate Claim for Compensation On Account of Work Injury on August 13, 2012 [ECF No. 19-1 at 25 n. 5], which is more than one month after Plaintiff's release from BOP custody.

---

Urbano, P.A., 342 F. App'x 380, 381 (10th Cir. 2009) (quoting Smith v. United States, 561 F.3d 1090, 1103 (10th Cir. 2009)); Bagola v. Kindt, 131 F.3d 632, 645 (7th Cir. 1997) (finding IACA did not preclude Bivens claims); Cooleen, 248 F. App'x at 362 n. 5 (3d Cir. 2007) (noting that other circuit courts addressing whether 18 U.S.C. § 4126 [IACA] prevents plaintiffs from bringing Bivens actions for work-related injury have found that is does not, and the Third Circuit "decline[d] to find otherwise.")

[6] The court notes that the United States of America is the only proper defendant to an FTCA claim, and Plaintiff has not named the United States as a defendant. See Huberty v. U.S. Ambassador to Costa Rica, 316 F. App'x 120, 122 (FTCA claim properly dismissed where plaintiff failed to name the United States as defendant and failed to file a claim with the appropriate administrative agency.) To state an FTCA claim, Plaintiff would need to amend his complaint to add the United States of America as a defendant.

An inmate may bring the IACA claim up to sixty days following release if circumstances precluded the inmate from submitting the documentation during the pre-release period. 28 C.F.R. § 301.303(f). An inmate may also bring a claim for impairment up to one year after release, for good cause shown. Id. Defendants contend the complaint does not allege any circumstances that would support submission after the date of Plaintiff's release from BOP custody.

Plaintiff alleged that he filed a claim with the FPI-Inmate Claims Examiners Office in August 2012. At the time he filed the present complaint, he had "never received any reply back or decision as to his claim and/or his tort claims that were filed with the FBOP Defendants in Washington, DC." (ECF No. 1-1 at 8, ¶9.) The final result of Plaintiff's administrative proceedings under the IACA is unclear.

"The scope of judicial review of IACA awards is very narrow, being limited to the procedural safeguards and assessment for abuse of discretion." Peguero v. Unicor Industries, Civ. Action No. 14-2371(RMB), 2014 WL 1716448 (D.N.J. Apr. 30, 2014) (citations omitted). A plaintiff must assert facts showing "that he was denied procedural due process or the decision by the agency was so unsupported by the record that it cannot qualify as rational/having a basis in evidence." Id.

Therefore, the Court will dismiss Plaintiff's IACA claim without prejudice. Plaintiff may amend the complaint if he can allege facts supporting a violation of procedural due process or abuse of discretion by the agency in addressing his IACA claim.

### E.   Immunity from Bivens Claims

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). There is no implied Bivens cause of action directly against a federal agency. Id. at 484-85. Similarly, federal officials sued in their official capacities are immune from suit. See Hines v. Irvington Counseling Center, 933 F.Supp. 382, 388 (D.N.J. Jan. 23, 1996) (dismissing suit against federal agency employees in their official capacities); Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a federal officer in his official capacity is actually a suit against the United States).

Plaintiff's Bivens claims against the Department of Justice, the Bureau of Prisons' Federal Prison Industries/Inmate Compensation Systems and Inmate Claims Examiners' Office, and the federal employees/officials in their official capacities will be dismissed based on immunity from Bivens claims.

### F.   Failure to State a Bivens Claim Against an Individual Defendant

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, a court can begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Determining whether a complaint states a plausible claim for relief is a context-specific task. Id. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). The elements of a Bivens claim will vary with the constitutional provision at issue. Id.

Bivens actions are the federal equivalent to suits brought under 42 U.S.C. § 1983 against state actors whose conduct violates a constitutional right. Id. at 675-76 (2009). Therefore, federal courts generally apply principles developed in § 1983 cases to Bivens actions. Schrob v. Catterson, 948 F.3d 1402, 1408-09 (3d Cir. 1991). "Government officials may not be

14

held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676.

### a.   Claims Against BOP Director In His Individual Capacity.

There are no allegations in the complaint suggesting how the BOP Director was personally involved in any alleged constitutional violation. Therefore, the Court will dismiss the Bivens claims against the BOP Director without prejudice. See Ruiz v. Federal Bureau of Prison, 481 F. App'x 738, 741 (3d Cir. 2012) (per curiam) (dismissing BOP Director as a defendant because plaintiff did not allege any personal involvement in a constitutional violation; and a Bivens claim cannot be premised upon respondeat superior liability.)

### b.   Claims Against Martinez and Cruz

When a complaint is silent as to a defendant, except for his name appearing in the caption, the complaint is properly dismissed even under the liberal construction given to pro se complaints. See Banks v. County of Allegheny, 568 F.Supp.2d 579, 585 (W.D. Pa. 2008), quoting Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974); Strunk v. Wells Fargo Bank, N.A., 614 F. App'x 586, 589 n. 4 (affirming dismissal of defendants named only in the caption). In the caption, Plaintiff names "David Martinez & Mr. Cruz Inmate Systems Supervisor." Plaintiff does

not mention Martinez or Cruz anywhere else in the complaint. Therefore, the Court will dismiss Martinez and Cruz from this action without prejudice.

### c.   Eighth Amendment Claims

The Court notes that Defendants did not specifically address whether Plaintiff stated an Eighth Amendment claim based on his allegations that Defendants assigned him a job despite their knowledge that he was disabled from any work, and this led to his permanent injury. Defendants, however, contend that Plaintiff did not allege a cognizable Bivens claim against any individual defendant. Thus, the Court will address the work assignment claim.

A plaintiff can state an Eighth Amendment claim based on conditions of confinement when he alleges prison officials were deliberately indifferent to the fact that his work assignment was inappropriate due to his existing medical condition. See Williams v. Norris, 148 F.3d 983, 987 (8th Cir. 1998) ("In this type of case, the plaintiff must prove that the defendants knowingly compelled [the prisoner] 'to perform labor that is beyond an inmate's strength, dangerous to his or her life or health, or unduly painful'" (quoting Sanchez v. Taggart, 144 F.3d 1154, 1156 (8th Cir. 1998)); see Johnson v. Townsend, 314 F. App'x 436, 440-41 (3d Cir. 2008) (complaint was insufficient to bring work assignment "within the Eighth Amendment's

prohibition against cruel and unusual punishment absent any indication that [the plaintiff] was compelled to perform physical labor that was beyond his strength, endangered his life or health, or caused undue pain, or where there is no allegation that the work assignment was punitive in nature") (citations omitted).

Plaintiff alleged he was assigned to work in Food Services despite that fact that "Defendants each from the Case Management, Counselors, Medical & Health Services, Food Services, Inmate Systems staff, were fully aware, that the Plaintiff Dr. Keenan Cofield, was totally and permanently disabled . . ." (ECF No. 1-1 at 6, ¶1.) Plaintiff also alleged "Defendants have long documented" his medical condition and his inability to perform any work. (Id. at 6-7, ¶¶3-4). Plaintiff cited to a medical record dated September 16, 2011, which shows he was not cleared for food service and "Not Medically Cleared --- Permanent." (Id.)

Plaintiff also cited and attached to his complaint a March 8, 2012 Medical Duty Status Form signed by Dr. Ruben B. Morales, containing the same medical restrictions as in the September 2011 record. (Id. at 7, ¶5.) Nonetheless, he was given a job assignment in Food Service, and he fell twice on wet floors while performing his job. (Id. at 8, ¶7.) Plaintiff alleged he suffered "back swelling, spasms, left leg swelling, left

shoulder pains, right hand swollen, cracking and swelling on left side jaw-with TMJ-Lockjaw, permanent" and "[a]ll resulted from my falls at FPC-Fairton, NJ." (Id., ¶8.)

Plaintiff must allege facts that would plausibly show a particular defendant had actual knowledge of his work restrictions but acquiesced in forcing him to work beyond those restrictions. Compare Williams v. Norris, 148 F.3d 983, 985-86 (8th Cir. 1998) (denying summary judgment on Eighth Amendment claim where Plaintiff had evidence that he informed each defendant of his medical restriction and requested a medical consultation before he was assigned the job, but he was forced to start the job before his requested medical records arrived at the prison.) Plaintiff stated only that unidentified persons "were fully aware" that he could not perform any job due to his total, permanent disability, and based on his medical restrictions assigned in 2011 and March 8, 2012.

Although Plaintiff may sue individuals whom he cannot yet identify, he must still allege facts showing the individual's personal involvement in a constitutional violation. It is not enough to allege certain classes of persons "were fully aware" of Plaintiff's medical disability without alleging how each individual would have gained knowledge of (1) the fact that he received benefits for total and permanent disability before incarceration; (2) the fact that he was medically restricted

from work by a physician from another correctional facility in 2011; and (3) that Dr. Morales medically restricted him from work on March 8, 2012. In addition to alleging how each defendant was "fully aware" of these facts, Plaintiff must also allege how each individual acquiesced in forcing him to work beyond his medical restrictions. For these reasons, the Court will dismiss without prejudice the Eighth Amendment work assignment claims against the defendants in their individual capacities.

Plaintiff also alleged that he received inadequate medical care in violation of the Eighth Amendment. To state an inadequate medical care claim under the Eighth Amendment's proscription against cruel and unusual punishment, an inmate must allege facts showing the defendant's conduct constituted "unnecessary and wanton infliction of pain" or that the defendant was deliberately indifferent to the inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A medical need is "serious," in satisfaction of the second prong of the Estelle test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J.1979), aff'd, 649 F.2d 860 (3d Cir.

1981)). Denial of or delay in treatment that causes unnecessary and wanton infliction of pain may also constitute a serious medical need. Id. (citing Estelle, 429 U.S. at 103). "In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id. (citations omitted); Andrews v. Camden County, 95 F.Supp.2d 217, 227 (D.N.J. 2000) (same); Price v. Corr. Med. Serv., 493 F.Supp.2d 740, 745 (D.Del. 2007) (same). An allegation of medical malpractice or simple negligence does not rise to the level of a constitutional violation.  Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

Plaintiff alleged the delay in medical treatment for months after he fell at work caused him permanent injury. (ECF No. 1-1 at 8, ¶8.) He further alleged "the Plaintiff filed over 30 to 60 Sick Calls and complaints about his accident and no medical treatment for 4 to six months." (Id. at 8, ¶9.) Plaintiff admitted that "months later" a physician's assistant examined him but did not perform x-rays or the type of extensive examination he was provided by other state and private medical professionals. (Id. at 9, ¶10.) Plaintiff asserted the delay and denial of medical treatment caused his injuries, including nerve damage and lockjaw, to be permanent. (Id.)

Plaintiff asserted that he complained about his lack of treatment to various "AW's,[7] Warden, Health Services etc." (ECF No. 1-1 at 9, ¶10.) He did not allege that any specific prison medical professional refused to evaluate or treat him upon his request or even that any specific prison employee prevented him from seeing a prison medical professional.

There is no respondeat superior liability for supervisory officials. See Dickerson v. SCI Graterford, 453 F. App'x 134, 137 (3d Cir. 2011) (per curiam) (liability of supervisory prison officials cannot be predicated solely on the operation of respondeat superior) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Additionally, prison officials are not liable for Eighth Amendment inadequate medical care claims simply because they "had some direct involvement with [the inmate's] grievances" because there is no constitutional right to a grievance procedure. Id. (citing Flicka v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). Based on his filing of a grievance, Plaintiff has failed to state an Eighth Amendment inadequate medical care claim against Warden J.T. Shartle in his individual capacity.

Personal involvement in an alleged constitutional violation can be shown by personal direction, or actual knowledge and

_____

[7] The Court assumes "AW" stands for Assistant or Associate Warden.

acquiescence. Rode, 845 F.2d at 1207. "Allegations of
participation or actual knowledge and acquiescence, however,
must be made with appropriate particularity." Id. at 1207-08.

Plaintiff must identify a particular person (even if
his/her name is unknown at this time) who was aware that his
Sick calls and other requests for medical treatment, after his
slip and fall injuries, were denied or deliberately delayed, and
that such person knew that he had not received any medical
treatment from prison medical providers. Plaintiff might do this
by alleging who received his "Sick Calls" or from whom he
requested medical treatment (as opposed to with whom he filed
administrative grievances) but was denied. The Court will
dismiss this Eighth Amendment claim without prejudice, allowing
Plaintiff to amend the complaint if he can allege additional
facts showing the personal involvement of a defendant, including
actual knowledge of and acquiescence in a specific denial of or
delay in treatment of an injury.

Plaintiff also alleged an Eighth Amendment violation based
on his conditions of confinement in administrative segregation
from April 6, 2012 through April 20, 2012, and April 30, 2012
through May 2 or 3, 2012. (ECF No. 1-1 at 10, ¶12.) The alleged
unconstitutional conditions were that: (1) he was housed with
two other inmates in a cell built for two; (2) many times he had
to sleep on the floor; and (3) Plaintiff became sick when "the

3rd inmate who had a serious infection that required me and the other inmate to get medical treatment and meds." (Id.) Sleeping on the floor aggravated his back and leg injuries. (Id.)

Defendants contend that Plaintiff's allegations against "triple-celling", being housed with a sick inmate, and sleeping on the floor for a brief period do not raise a claim of constitutional magnitude. Defendants further assert Plaintiff did not identify any BOP official who was actually aware of a condition that imposed a serious risk of harm to Plaintiff.

"[T]o state an Eighth Amendment conditions of confinement claim, [a] [p]laintiff must allege facts plausibly showing that his conditions were so objectively severe that they deprived him of a basic human need and that the defendants were *deliberately indifferent* to the particular harm that [the] [p]laintiff suffered." See Velazquez v. Zickefoose, Civ. Action No. 11-2459(RMB), 2014 WL 6611058, at *8 (emphasis in original) (citing Farmer v. Brennan, 511 U.S. 825, 834-37 (1994); Helling v. McKinney, 509 U.S. 25, 32 (1993); Wilson v. Seiter, 501 U.S. 294, 305 (1991)).

Absent any allegation of specific harm, "triple-bunking" for less than a month, does not constitute the kind of serious deprivation of basic human needs required to establish an Eighth Amendment violation. North v. White, 152 F. App'x 111, 113 (3d Cir. 2005) (citing Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir.

1997)). Here, in addition to "triple-celling," Plaintiff alleged that the overcrowding forced him to sleep on the floor at times, which aggravated his injuries. Plaintiff did not indicate whether he was provided a mattress or whether he had any particular medical order regarding his bedding.

Plaintiff also alleged he became sick when he was housed with a sick inmate, and he was required to take medication to avoid infection from the inmate. Because Plaintiff was provided with medication, and he did not otherwise allege how there was a serious risk of harm to his health from exposure to the inmate or from taking the medication, Plaintiff has not alleged deliberate indifference based on this condition of confinement. See Oliver v. Bucks County Corr. Facility-Warden, 181 F. App'x 287, 289 (3d Cir. 2006) (although there was a question whether the prisoner was at some risk of catching MRSA, the record was insufficient to establish the warden was aware of a serious risk and indifferent to it).

While Plaintiff may be able to allege an Eighth Amendment conditions of confinement claim by providing additional facts, the Court will dismiss his claims regarding triple-celling, sleeping on the floor, housing with a sick inmate without prejudice. Plaintiff must allege each defendant's personal involvement in the alleged constitutional violation. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("a prison official cannot

24

be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

### G.   Assignment to Administrative Segregation

To state a due process claim, a plaintiff must establish that he was deprived of a liberty interest. Riley v. Carroll, 200 F. App'x 157, 158 (3d Cir. 2006) (citing Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002)). A liberty interest can arise from the Due Process Clause or by state-creation. Id. If an inmate's degree of confinement is within the sentence imposed, and the conditions he is subject to do not otherwise violate the Constitution, there is no liberty interest protected by the Due Process Clause. Id.

Generally, placement in administrative segregation will not create a liberty interest. Id. (citing Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002)). Administrative custody for periods as long as fifteen months is not an atypical or significant hardship in relation to the ordinary incidents of prison life so as to create a protected liberty interest. Id. (citing Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997)).

Plaintiff alleged he was housed in administrative segregation from April 6, 2012 through May 3, 2012, without notice and a hearing, in violation of his due process rights. (ECF No. 1-1 at 10-11, ¶¶12, 15.) Plaintiff's stay in administrative segregation was far less fifteen months, which the Third Circuit has found not to constitute an atypical or significant hardship that creates a liberty interest under the Due Process Clause. Therefore, he has failed to state a Due Process claim based on his placement in administrative segregation. The claim will be dismissed with prejudice because amendment to the complaint will not cure the failure to allege a protected liberty interest. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) (dismissal must be without prejudice if amendment of the complaint may cure the deficiency).

### H.   Defective Detainer Claim

Plaintiff alleged Defendants violated his right to due process by enforcing the County of Baltimore's detainer against him, where the detainer was based on an unsigned Sentence and Commitment Order. (ECF No. 1-1 at 10-11, ¶¶14, 16.) Defendants assert Plaintiff alleged this same claim, that the detainer documents are illegal or invalid, in two prior lawsuits filed in the District of Maryland, without success.

Significantly, in <u>Allen v. State of Maryland</u>, Civ. No. CCB-13-3334, 2013 WL 6062005 (D.Md. Nov. 15, 2013), the district court dismissed Plaintiff's action for damages under 42 U.S.C. § 1983 without prejudice:

> To the extent that plaintiffs take issue with the legality of their confinement, complaining that warrants and orders were illegally issued by state court clerks without judicial involvement, their action shall be dismissed without prejudice. Pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), a civil rights claimant cannot recover damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless he first proves that "the conviction or sentence has been reversed on direct appeal, . . . or called into question by a federal court's issuance of a writ of habeas corpus" filed under 28 U.S.C. § 2254. <u>Id.</u> at 486-87. These allegations directly related to the constitutionality of plaintiffs' state convictions and success in this civil rights action would vitiate the legality of those sentences or convictions. Thus, these claims may not proceed at this time under *Heck*.

Here, the basis for Plaintiff's allegation that Defendants violated his rights by enforcing an invalid detainer is that the Sentence and Commitment Order itself was invalid. (<u>See</u> ECF No. 1-1 at 11, ¶14 ("judgment and commitment order is not valid and no sentence is legally imposed until, the Judge signs his Judgment & Commitment Order.")) This directly calls into question the validity of his State Court conviction. Plaintiff

has not plead facts showing that he satisfied the favorable termination rule of Heck. Therefore, this claim will be dismissed without prejudice as Heck-barred.

### I.   Due Process Claim for Deprivation of Property

Plaintiff alleged that an unidentified officer at FCI-Fairton packed his belongings upon his transfer to another facility, and when his belongings arrived, some of Plaintiff's property was missing. Plaintiff did not receive a response to his many grievances or his tort claims concerning his lost property.

Defendants contend Plaintiff failed to state a Due Process claim because such a claim is not actionable unless no adequate post-deprivation remedy is available. Defendants assert there are adequate remedies for lost property under 31 U.S.C. §§ 3723 (small claims for privately owned property damage or loss), 3724 (claims for damages caused by investigative or law enforcement officer of the Department of Justice), citing Ali v. Federal Bureau of Prisons, 552 U.S. 214, 228 n.7 (2008) and other cases.

Plaintiff has not alleged sufficient facts to establish that the post-deprivation remedies he sought for his loss of property are not adequate. See Jordan v. Horn, 165 F. App'x 979, 981 (3d Cir. 2006) (absence of final response to denial of grievance did not render inadequate an otherwise adequate post-deprivation remedy). Although Plaintiff alleged he did not

28

receive any response to his complaints or tort claims, he did not provide sufficient information for the Court to determine that he properly filed such remedy requests[8] or that he was entitled to a response within a particular time frame, rendering inadequate any available remedy. Therefore, the Court will dismiss Plaintiff's Due Process claim for deprivation of property without prejudice.

**J.   Failure to Supervise and Failure to Train**

Defendants do not specifically address Plaintiff's failure to supervise and failure to train claims in Count Five of the Complaint. The Court may, however, review and <u>sua sponte</u> dismiss any claim made by a prisoner in a civil action where the prisoner has failed to state a claim upon which relief may be granted. <u>See</u> 28 U.S.C. § 1915A(b)(1).

In <u>Barkes v. First Corr. Medical, Inc.</u>, the Third Circuit Court of Appeals, in a § 1983 case addressing whether Supreme Court precedent[9] abolished supervisory liability, held that:

> a state official, by virtue of his or her
> own deliberate indifference to *known*
> deficiencies in a government policy or
> procedure, has allowed to develop an
> environment in which there is an

---

[8] For example, Defendants note that Plaintiff could not recover for loss of personal property by a BOP officer under the FTCA because 28 U.S.C. § 2680(c) forecloses such claims. <u>See</u> <u>Ali v. Federal Bureau of Prisons</u>, 552 U.S. 214, 228 (2008). Plaintiff has not alleged that he filed a claim under 31 U.S.C. §§ 3723, 3724.

[9] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

> unreasonable risk that a constitutional
> injury will occur, and that such an injury
> does occur. . . . Liability in such a
> situation is . . . imposed not vicariously
> but based on the supervisor's own
> misconduct, because to exhibit deliberate
> indifference to such a situation is a
> culpable mental state under the Eighth
> Amendment.

766 F.3d 307, 319 (3d Cir. 2014) (emphasis in original) reversed on other grounds, Taylor v. Barkes, 135 S.Ct. 2042 (2015). The court held that the standard it announced in Sample v. Diecks, 885 F.2d 1099, 1119 (3d Cir. 1989) for imposing supervisory liability based on an Eighth Amendment claim was consistent with Supreme Court precedent. Id.

In Sample, the Third Circuit held that the elements of a claim for supervisory liability or liability for failure to train are: (1) an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of the potential for the unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. 885 F.2d at 119. In Barkes, the Third Circuit also noted that "the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged."

Additionally, the Supreme Court in Connick v. Thompson, 563 U.S. 51, (2011) discussed the standard for liability for failure to train. "A pattern of similar constitutional violations by

untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (quoting Board of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 409 (1997)). The range of "single incident" liability for failure to train is narrow. Id. at 64.

In the present complaint, Plaintiff did not meet the pleading standard required for his supervisory and failure to train claims. Instead, Plaintiff alleged only conclusory allegations that suggest vicarious liability of the supervisory defendants, regardless of the constitutional claim at issue. The allegations in the complaint are insufficient to state a claim for a supervisory liability or for failure to train. Therefore, these claims will be dismissed without prejudice.

## III. CONCLUSION

For the reasons discussed above, in the accompanying Order filed herewith, the Court will dismiss with prejudice Bivens claims against the following defendants: U.S. Department of Justice, Federal Bureau of Prisons (and divisions within the FBOP), and each of the federal officials and employees in their official capacities. The Court will dismiss the Due Process claim related to Plaintiff's placement in administrative segregation with prejudice. The Court will dismiss the remainder of the claims in the complaint without prejudice.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**UNITED STATES DISTRICT JUDGE**

Dated: February 3, 2016